UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JEFFREY L. JACKSON                                                                          PLAINTIFF

VS.                            Case No. 3:06CV00121-BD

MICHAEL J. ASTRUE,
Commissioner of Social Security[1]                                                  DEFENDANT

MEMORANDUM OPINION AND ORDER

I.   Procedural History

Plaintiff Jeffrey L. Jackson filed an application for disability insurance benefits under the Title II and Part A of Title XVIII of Social Security Act on March 17, 2004, alleging disability commencing on August 1, 1994.  (Tr. 49-51)  A hearing was held on October 26, 2005, before an Administrative Law Judge (ALJ)[2] for the Social Security Administration.  (Tr. 223)  The ALJ denied benefits on January 12, 2006 (Tr. 11-18), and the Appeals Council denied Plaintiff's request for review.  (Tr. 3-5)  This appeal to the District Court followed.  The only issue before the Court is whether the decision of the Commissioner of Social Security (Commissioner) that the claimant is not disabled is supported by substantial evidence.  For reasons explained below, the decision of the

---

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007.  He is therefore substituted for Jo Anne B. Barnhart pursuant to Fed.R.Civ.P. 25(d)(1).

[2] The Honorable Garry L. Brewer.

Commissioner to deny benefits must be affirmed.

**II.    Background**

Jeffrey L. Jackson was 34 years old in 1994, when he allegedly became disabled as a result of a back injury.  (Tr. 228)  He testified that back and hip pain are the only problems causing his alleged disability.  (Tr. 237)

Mr. Jackson was 45 years old at the time of the October 26, 2005 Hearing (the "Hearing") before the ALJ.  Mr. Jackson has a high school education (Tr. 224) and has worked as a cashier, sales clerk, department manager, and retail merchandiser.  (Tr. 71)  He drives without restrictions and, in fact, drove himself to the Hearing  (Tr. 226)  Mr. Jackson's daily activities include making breakfast with his wife, working at his computer, and attending church.  (Tr. 234)  He testified that he can bend forward and touch his knees, move his arms without restriction, and that he can carry 20 to 25 pounds on a regular basis.  (Tr. 235-36)  He takes only over-the-counter medications, Aleve and Tylenol.  (Tr. 232-33)  No physician has ever told him he cannot work due to his back problems.  (Tr. 229-30)  Mr. Jackson candidly testified that he could perform retail jobs suggested by Dr. Vance Sales, a Vocational Expert ("VE"), if employers would give him "reasonable breaks."  (Tr. 244)

The medical evidence relating to Mr. Jackson's back injury includes: a September 5, 1994 emergency room record from White River Medical Center; a CT scan of Plaintiff's lumbar spine from October 10, 1994 (Tr. 107); a 1994 report from Dr. Edward

H. Saer, one of Plaintiff's treating physicians (Tr. 108-09); a June 27, 1998 emergency room record from the White River Medical Center (Tr. 178); an April 4, 2003 Final Diagnostic Report from the White River Medical Center (Tr. 194); and a report from an MRI conducted February 10, 2004. (Tr. 210-11)

### III.    Findings of the ALJ

The ALJ appropriately followed the five-step sequential analysis set out in the social security regulations, C.F.R. §§ 404.1520(a)-(f) (2003), and found: (1) that Mr. Jackson has not engaged in substantial gainful activity since the onset of his alleged disability; (2) that he suffers from a "severe impairment," as that term is interpreted for purposes of the Social Security Regulations; (3) that Mr. Jackson does not have an impairment, or combination of impairments, that rises to the level of any impairment listed in Appendix 1 to Subpart P, Regulation No. 4; (4) that his impairment prevents him from performing his past work; but (5) that Mr. Jackson retains the residual functional capacity (RFC) to perform sedentary work.[3]

Plaintiff contends that the findings of the ALJ are not supported by substantial evidence because: (1) the ALJ improperly rejected Plaintiff's subjective complaints of

---

[3] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

pain; (2) the ALJ did not properly assess Plaintiff's RFC; and (3) the ALJ did not pose a proper hypothetical to the VE.

The Defendant argues that the ALJ properly found that Plaintiff retained the RFC to perform sedentary work based on: (1) a credibility determination that Plaintiff's pain was not as severe as Plaintiff contended; (2) objective medical evidence in the record, including reports from treating doctors; (3) Plaintiff's own testimony regarding his daily activities and abilities; and (4) the opinion of the VE.

## IV. Legal Analysis

In reviewing the decision of the ALJ, this Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g). This review function is limited, and the decision of the ALJ must be affirmed "if the record contains substantial evidence to support it." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). "Substantial evidence is less than a preponderance but enough so that a reasonable mind could find it adequate to support the decision." *Id*. Evidence that both supports and detracts from the ALJ's decision must be considered, but the decision cannot be reversed "merely because there exists substantial evidence supporting a different outcome." *Id*. "Rather, if, after reviewing the record, . . . it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, we must affirm the decision of the [ALJ]." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (citations and quotations omitted). Thus, the

Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g).

**A.**     ***Subjective Complaints of Pain***

Plaintiff contends that the ALJ did not afford sufficient weight to the subjective complaints of back and leg pain. However, the ALJ acknowledged Mr. Jackson's complaints of severe disabling back pain and considered these subjective complaints under the guidelines set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). (Tr. 15) The ALJ noted that Mr. Jackson may indeed have some level of discomfort, but discredited the Plaintiff's testimony regarding the severity and disabling effect of the pain.

The ALJ is in the best position to gauge the credibility of testimony, and those credibility determinations are entitled to some deference. *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). In this case, the ALJ's conclusion is supported by the objective medical evidence in the record, the Plaintiff's own testimony, and the testimony of the Vocational Expert.

Plaintiff's emergency room records from September 5, 1994, soon after his initial back injury, indicate that "[l]umbar spine films were negative." (Tr. 186) An October 10, 1994 X-ray showed that there was "perhaps minimal annular bulging at the L5-S1, but no

herniated nucleus pulposus was identified." (Tr. 107) Dr. Saer, a treating physician, noted that the X-rays were "unremarkable" and that the CT scan was "basically negative too." (Tr. 109) Dr. Saer opined that Plaintiff "[m]ore than likely . . . had a lumbar strain or sprain." (Tr. 109) Plaintiff went to the White River emergency room on June 27, 1998, for an upper respiratory problem unrelated to his back problems. The records from that visit indicate, however, that Plaintiff had "[f]ull active and passive range of motion." (Tr. 178)

An April 27, 2003 Final Diagnostic Report from the White River Medical Center indicates "minimal anterior osteophyte spurring at L4 and L5." (Tr. 194) Plaintiff underwent an MRI of his spine on February 10, 2004. The result of that test was that Plaintiff has "[d]egenerative disc desiccation and mild disc bulging L3 through S1. No significant spinal or neural foraminal stenosis, however" and "mild DJD [degenerative disc desiccation] bilateral facet joins L4 through S1." (Tr. 211)

The ALJ also considered Plaintiff's reported daily activities, including cooking, working at his computer, driving, watching television, and attending church. (Tr. 234-36) Plaintiff testified that he can bend forward to touch his knees, move his arms, push and pull a grocery cart, and lift 20-25 pounds on a regular basis. (Tr. 235-36) See, *e.g.*, *Johnston v. Shalala*, 42 F.3d 448 (8th Cir. 1994) (affirming ALJ's discrediting claimant's allegation of disabling pain because applicant could read, watch television and drive, indicating that her ability to concentrate was not affected by pain).

The ALJ's finding regarding Plaintiff's subjective complaints of pain is further supported by the fact that Plaintiff is currently taking only over-the-counter pain medications. Plaintiff testified that he takes only Tylenol and Aleve for pain, although he attributes this to his inability to afford prescription medications. (Tr. 232)

**B.**     *Residual Functioning Capacity*

Plaintiff next argues that the ALJ improperly determined that he retained the RFC to perform sedentary work. Plaintiff's own testimony supports the finding of the ALJ. The Plaintiff testified that he could perform retail jobs suggested by the VE, Dr. Sales, so long as employers would give him "reasonable breaks." (Tr. 244) He can bend, push and pull a grocery cart, drive, and lift 20 to 25 pounds on a regular basis, according to his testimony. (Tr. 234-36) Sedentary work requires that a person lift no more than 10 pounds at a time. 20 C.F.R. § 404.1567(a) Nothing in the medical evidence, or indeed Mr. Jackson's own testimony, contradicts the finding by the ALJ that Mr. Jackson could perform sedentary work and that there are sufficient jobs available.

**C.**     *The Hypothetical Posed to the Vocational Expert*

The lengthy hypothetical put to the VE by the ALJ covered all limitations supported by the evidence and made allowances for the Plaintiff's subjective complaints of pain. (Tr. 238-43) Furthermore, the ALJ invited Plaintiff's counsel to "add to" the hypothetical:

> Q:     [W]hat would you like to add to that hypothetical
>        question and what would, and . . . if you don't mind

>    tell me what you would base it on if it's in the way of medical evidence if you would like to add to those limitations that I placed on it.
>
> A:   No. I don't, I don't believe I would want to add any more to it so I believe we have the factual limitations that's there.

(Tr. 234-44) The Plaintiff's complaints about the validity of the hypothetical posed by the ALJ are without merit.

**V.   Conclusion**

The record in this case amply supports the ALJ's finding that Mr. Jackson is not disabled within the meaning of the Social Security Act. There is sufficient evidence in the record, both medical and testimonial, to support the ALJ's assessment that Plaintiff retains the capacity to perform sedentary work. Accordingly, Plaintiff's appeal is DENIED. The Clerk is directed to close the case.

DATED this 4th day of May, 2007.

_____
UNITED STATES MAGISTRATE JUDGE